458 So.2d 1071 (1984)
David CERF, Appellant,
v.
STATE of Florida, Appellee.
No. 64183.
Supreme Court of Florida.
September 6, 1984.
Rehearing Denied December 6, 1984.
David F. Cerf, Jr., in pro. per.
Janet Reno, State Atty. and Ira N. Loewy, Asst. State Atty., Eleventh Judicial Circuit, Miami, for appellee.
PER CURIAM.
This is an appeal from an attorney disciplinary proceeding in circuit court pursuant to Fla.Bar Integr.Rule, art. XI, Rule 11.14. We have jurisdiction. Art. V, § 15, Fla. Const. We approve the disciplinary measure recommended by the circuit judge in his written judgment and report of disciplinary matter.
Appellant was the attorney in a child custody proceeding. He was not the original attorney of record; he came into the case after what he thought were improper orders were entered. Appellant represented the mother, who initially was awarded custody of the minor child. However, when the mother was admitted to a psychiatric hospital for treatment of a mental illness, temporary custody of the child was awarded to the father. Upon her release, the mother sought to regain custody of the child in the proceedings which are the subject of this disciplinary action.
During the course of the proceedings, appellant had many heated discussions with the presiding judge in the matter, Judge Jon Gordon. Judge Gordon appointed a guardian ad litem to represent the minor child in the custody proceeding. Appellant, dissatisfied with this appointment, filed numerous motions attempting to have the order appointing the guardian ad litem vacated.
His motions unsuccessful and the child custody litigation terminated adversely to his client, appellant filed a writ of mandamus in the Third District Court of Appeal attempting to have the child returned to his mother. He also filed an appeal from the circuit court judgment. It is primarily the allegations concerning Judge Gordon made in these pleadings to the Third District Court of Appeal that caused this disciplinary action to be brought against appellant.
As a result of the accusations made against him in appellant's pleadings, Judge Gordon, pursuant to Fla.Bar Integr.Rule, art. XI, Rule 11.14, directed the state attorney for the Eleventh Judicial Circuit to file disciplinary proceedings against the appellant. The motion was filed on February 9, 1983, and Judge Vann was assigned to try the case. After trial, the judge entered a written order setting forth his findings. Because the record supports these findings, we will quote the relevant portions. The trial judge found as follows:

*1072 Certain pleadings had been filed on December the 22nd, 1982 entitled, Petition or for Rehearing of Order dated December 7th, 1982 and for other relief. The appellate court on its own motion struck paragraphs ten and eleven from the petition as being scandalous and impertinent.
Paragraph ten of this petition had stated, "This should have been the end of the case but that was not to be, Judge Gordon on his own motion made this case into a federal case and appointed Paul Fletcher as an attorney ad litem for the child. The judge also ordered the parties to pay Mr. Fletcher one thousand dollars within a week and whatever he chose to charge them. Judge Gordon later recused himself to avoid the appearance of impropriety and Paul Fletcher was removed by the new judge assigned to the case. In paragraph eleven the Petitioner submits, there can be no doubt that the only reason Judge Gordon joined the grandparents in this action and appointed Paul Fletcher to be the attorney for the child was so Judge Gordon could give one of his cronies a political appointment, and for no other reason. This action by Judge Gordon does not reflect the actions of the vast majority of circuit judges and be considered an abuse of his discretion."
In another pleading filed by Cerf on January 13th, entitled Petitioner's Response to the Motion to Strike, contained in Respondent's reply for petition of rehearing, he stated on page 3 of that pleading, paragraph B, "The Respondent was the person who entered the order appointing the attorney ad litem and the Respondent was the person responsible for its content and whether or not it arose public confidence in the judiciary. Every knowledgeable person including the press knows that one thousand dollars is the maximum political contribution, and that the court appointed attorneys are only entitled to a reasonable fee. To order the mother and father of the child to pay a court appointed attorney the same amount as the maximum political contribution allowable to judge up front and to order them to pay the attorney's fee without limitation is scandalous in itself." Further, on page 5, paragraph E of that pleading Cerf wrote "Proverbs 28:01, the wicked fleeth when no man pursueth. The Petitioner's counsel has known and liked the Respondent for many years and bears no hard feelings against Respondent or the attorney ad litem he appointed, as is more fully set forth in Exhibit 9 attached. This, of course, does not mean that the Petitioner's counsel would sit idly by and watch his client get ripped off without trying to do something about it. To just sit idly by would be to enter into a conspiracy of silence and the Petitioner's counsel has never been a part of that conspiracy. Rather he tried to make the best of a bad situation and work around it."
Further in that same paragraph he wrote "It was the Respondent who entered the order and it is his own fault that he was, as Shakespear wrote, `Hoisted with his own Petard': Hamlet, Act 3, Scene 4. The Petitioner further submits that the reporting of a scandalous action by the Respondent to this court does not make the report scandalous. If it was, then this court would never be able to review a scandalous order entered by a lower court judge." On page 6 of the same pleading, paragraph F, Cerf writes "He's also working with the Circuit Court to try to prevent another unfavorable Dade County Grand Jury report as to the failure of the political spoils system to provide guardians ad litem for the elderly as is more fully set forth in Exhibit 11. He has been in contact with the press about problems concerning the appointment of attorneys but has not given the press the name of this case or the case number of the name of the judge. Suffice it is to say the press considers the action of any judge in ordering parents to pay a court appointment attorney one thousand dollars up front scandalous and newsworthy. Petitioner's counsel has, however, kept this out of the *1073 press... . The honest judges and honest lawyers do not need any more negative publicity about their brethern who stray from the path." Further in page 6 of the motion Cerf writes, "The Respondent seeks to have sanctions imposed upon counsel for the Petitioner for blowing the whistle on him based on the Carter v. Beggs case found at 51 Southern Second 423."
Further in the same petition on page 7, Cerf writes "The Petitioner is also concerned that the granting of the motion to strike or the imposition of sanction on counsel for the Petitioner for bringing the action of the lower court to this court's attention will lead to the negative publicity about the court that he has in good faith tried to prevent. Such a thing may lead to the identification of the order already considered scandalous by the press and every attorney that has discussed this with counsel for the Petitioner."
In a petition for rehearing of order dated January 11, 1983 filed on January the 26th, 1983 in paragraph eight of said petition, Cerf wrote, "Acts like the order entered by the lower court judge just add fuel to the fire of the public perception and that the Dade County courts exist only for the rich, and those citizens unable to bribe a judge or make a maximum political contribution to his campaign can't get justice. This is especially acute when Dade County has been torn by repeated riots and scandals involving judges."
In another proceeding in the Third District Court of Appeal, Case Number 82-1464, which was a motion filed in evidence in this proceeding, marked Respondent's Exhibit "N", in an action for mandamus in which David Cerf attempted to have the Third District Court of Appeal mandamus Judge Edward Kline, a judge of the Eleventh Judicial Circuit to enter an injunction, to enjoin the killing of the deer in the Everglades. Mr. Cerf wrote in his pleadings in paragraph eight of said exhibit, "These appellants complained that Judge Kline did not give them their day in court before a judicial decision was made as to whether or not the mass killing of these deer was lawful. Judge Kline passed the buck to this court, and it appears the court will be remembered as the court that permitted the killing of deer without letting the humane organizations have their day in court on the lawfulness of the killing. Unless this court now grants a stay, or an alternative writ of mandamus so the humane organization can have their day in court, and this will not prejudice the appellee and will help restore the public confidence in the courts. The courts in and around Miami have suffered since the senseless killing of Arthur McDuffy. The senseless killing of these deer by cruel hunters will only reinforce the incorrect public impression of Miamians as barbarians who have nothing better to do than to go to the Everglades in the daytime, drink beer, kill tame deer and, later, in the nighttime, put on white sheets, bomb Jewish places of worship, burn crosses, and beat black men to death for running a red light, I'm afraid that in the court of law we'll hear the complaints of these victims."
It is primarily on the pleadings that Mr. Cerf filed more than the words spoken in proceedings before Judge Gordon, that brought about this action.
FINDING OF FACT
In the testimony before me that encompassed six different hearings, there was much irrelevant testimony, as well as documents of no relevant value, admitted by me in these proceedings. The testimony of David Cerf was repetitious, rambling, and he apparently did not comprehend that most of his testimony was not pertinent to issues before this court. Cerf holds himself out to be an expert in appellate procedure and in particular the use of extraordinary writs, to attempt to force trial judges to rule favorably with him. He testified that he gives lectures in which he tells those in attendance that he uses colorful words to catch the attention of the appellate court. The record of the pleadings filed and the appellate court's striking of certain portions of his *1074 pleading as being scandalous and impertinent, clearly shows that the conduct of David Cerf in filing such pleadings was irresponsible, impertinent, scandalous, and totally lacking in foundation for the truth or voracity of these pleadings.
Mr. Cerf attempted to create the impression that Judge Gordon had appointed Paul Fletcher because he was, as quoted from Cerf, "A political crony", and that Judge Gordon had awarded him a thousand dollars to repay him for a political contribution. The records show that Mr. Fletcher had never contributed anything to Judge Gordon and that Judge Gordon had accepted no contributions from any lawyer. The record shows that Paul Fletcher had represented Judge Gordon at one time when Judge Gordon bought and sold a home and for that service Judge Gordon had paid him a fee of eight hundred dollars. In his testimony, Cerf stated that Judge Gordon as well as Judge Thomas Tester were not, "square shooters". Throughout the proceeding, Mr. Cerf referred to perception of the public and perception of the press as an excuse, an apparent excuse, for the use of some of the language that he used in the pleadings. However, there was no evidence of what the public perception was, or the perception of the press, except for Mr. Cerf and from a Reverend Thedford Johnson, a black minister, who felt that most black people think that white politicians including judges are dishonest.
It is my finding that the Respondent did violate Canon 1 EC 1-5, D.R. 1-102(5) in his conduct before the trial court and in filing pleadings of such a nature before the appellate court, and in his testimony at the proceedings of this action.
RECOMMENDATION
I recommend the following:
1. That the Respondent be found guilty as charged of the violation of said Canon, Canon 1 EC 1-5, D.R. 1-102(5).
2. That the Respondent be given a public reprimand.
3. That all cost incurred in this proceeding be taxed against the Respondent.
Appellant does not deny that he made these statements against Judge Gordon without investigation as to their truth. Indeed, he cannot deny it, since they are documented in his pleadings that are made a part of the record in this proceeding.
Instead he argues in his petition for review to this Court that the trial judge erroneously denied certain motions that he made during the proceedings such as a motion to strike as sham pleading and a motion for summary judgment. Rule 11.14 does not expressly provide that the Florida Rules of Civil Procedure should apply. As such, it was not an abuse of discretion for the circuit judge to deny these motions.
The record clearly shows that appellant made false and unsubstantiated charges against Judge Gordon's integrity. Such conduct cannot be condoned. It is one thing to allow an attorney his truthful criticisms against our judicial system. However, it is quite another to allow an attorney a poetic license to falsely slander a circuit judge with untrue accusations of political corruption and bribery. Such accusations represent more than a personal attack upon that particular judge, but casts slur and insult upon the judiciary as a whole. See The Florida Bar in re Shimek, 284 So.2d 686 (Fla. 1973).
The findings and recommendation of discipline against appellant of the circuit judge are hereby approved. The publishing of this opinion in the Southern Reporter serves as a public reprimand to the appellant.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ALDERMAN, J., concurs in part and dissents in part with an opinion, in which ADKINS, J., concurs.
ALDERMAN, Justice, concurring in part, dissenting in part.
I concur with the approval of the findings and the recommendation as to guilt of David Cerf. His conduct in filing such pleadings, however, was so irresponsible, *1075 impertinent, and scandalous that a public reprimand is not a sufficient penalty in this case. I therefore dissent from that portion of the majority opinion which approves the trial judge's recommended penalty. Instead, I would suspend appellant from The Florida Bar for six months. His conduct was reprehensible and warrants no less. It was contemptuous conduct, and the judges of the district court used unusual restraint when they merely struck portions of his rehearing petition as impertinent and scandalous and when they struck his petition for rehearing filed January 26, 1983. Appellant's reprehensible conduct has not ceased as evidenced by his reply brief in the present proceeding before us wherein he continues to make the same type of slurring comments for which the Court is now reprimanding him.
Appellant should be suspended from The Florida Bar for six months. Nothing less will impress upon him the reprehensibility of his conduct.
ADKINS, J., concurs.